UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| PATRICIA GAIL KENT, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:21-cv-00065 |
| § | |
| NEWREZ, LLC dba SHELLPOINT § | With Jury Demand Endorsed |
| MORTGAGE SERVICING, § | |
| § | |
| Defendant. § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Patricia Gail Kent ("Plaintiff"), by and through counsel, for her Complaint against Defendant NewRez, LLC dba Shellpoint Mortgage Servicing ("Defendant" or "Shellpoint"), states as follows:

### I. INTRODUCTION

1. Defendant engaged in willful, malicious, deceptive, and harassing actions against Plaintiff in furtherance of its efforts to illegally collect from her a debt that was included in her bankruptcy case, the secured portion paid in her confirmed and completed Chapter 13 Plan with the unsecured portion having been discharged. Defendant's actions at issue include: 1) sending Plaintiff correspondence demanding payment in a specified amount alleged to be "past due" by a date certain; and 2) threatening to accelerate her note and foreclose on her mobile home that was included in her completed Chapter 13 Plan.

2. Specifically, Plaintiff claims Defendant violated: 1) Tex. Fin. Code § 392.001 *et seq.*, known as the Texas Debt Collection Act ("TDCA"); 2) the common law prohibiting invasion of privacy; 3) defamation; and 4) the discharge injunction of the United States Bankruptcy Court

for the Northern District of Texas, Fort Worth Division. Plaintiff seeks to recover from Defendant actual, statutory, and punitive damages, and legal fees and expenses.

## II. Parties

3. Plaintiff is a natural person residing in Johnson County, Texas and a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and the TDCA, Tex. Fin. Code § 392.001(1).

4. Defendant Shellpoint is a foreign corporation that may be served by delivering a summons to its registered agent, Corporation Service Company dba Lawyers Incorporating Service Company, 211 E. 7th Street, Austin, Texas 78701-3218.

5. Defendant is a "creditor," "debt collector," and/or "third-party debt collector" under the TDCA, Tex. Fin. Code §§ 392.001(3)(6) and (7).

6. The debt Defendant was attempting to collect from Plaintiff was a "consumer debt," as defined by Tex. Fin. Code § 392.001(2).

## III. Jurisdiction and Venue

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334 and 1367.

8. Venue is proper this district because Defendant transacts business in this district, Plaintiff filed her bankruptcy case in this district, and the conduct complained of occurred in this district.

## IV. Factual Allegations

**A.   The Inclusion of the Subject Debt in Plaintiff's Bankruptcy Case, the Treatment of the Partially Secured Claim, Its Collateral Mobile Home, and the Discharge of the Unsecured Portion of the Claim.**

9. On February 2, 2015, Plaintiff and her husband filed Chapter 13 bankruptcy in case number 15-40475-mxm113 ("Bankruptcy Case") in the Northern District of Texas Bankruptcy Court, Fort Worth Division ("Bankruptcy Court").

10. On Schedule D, filed with her bankruptcy petition, Plaintiff listed a Green Tree Servicing LLC ("Green Tree") debt, Account Number XXXX6343 (the "Account"), as a partially secured claim, the collateral being a 28x72 Fleetwood Waverly Crest manufactured home, VIN# TXFLW84A/B16008WC12 (the "Collateral").

11. A true and correct copy of relevant portions of Plaintiff's Schedule D is attached hereto as Exhibit "A."

12. On February 5, 2015 the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice") to Green Tree by first class mail. The 341 Notice warned all creditors, in conspicuous language, against violating the automatic stay imposed by 11 U.S.C. § 362. The United States Postal Service did not return the 341 Notice sent to Green Tree, creating a presumption it was received by Green Tree.

13. On March 25, 2015, Green Tree filed a Motion for Relief from Stay as to the Collateral.

14. On April 28, 2015, Plaintiff filed her Amended Chapter 13 Plan indicating she and her husband were going to retain the Collateral to Defendant's claim, pay the secured portion of $27,000 through their Plan, and treat the balance as an unsecured debt.

15. A true and correct redacted copy of relevant portions of such Amended Chapter 13 Plan is attached hereto as Exhibit "B."

16. On June 6, 2015, Green Tree objected to Plaintiff's Chapter 13 Plan.

17. On June 9, 2015, the Court denied Defendant Green Tree's Motion for Relief from Stay and on June 10, 2015, Green Tree withdrew its Objection to Confirmation of Plaintiff's Amended Chapter 13 Plan.

18. On July 23, 2015, Plaintiff's Amended Chapter 13 Plan was confirmed.

19. On August 18, 2015, Plaintiff and Green Tree's Agreed Order Conditioning Automatic Stay was approved by the Court providing, inter alia, that the stay would remain in effect, the Collateral will be insured, and Chapter 13 payments will be timely made.

20. On or about November 6, 2017, Ditech Financial, LLC ("Ditech") became the new owner or servicer of the Account and its Collateral. Sometime thereafter, by information and belief, Defendant acquired the ownership or servicing rights to the Account.

21. On April 6, 2020, as all Chapter 13 payments under Plaintiff's confirmed Chapter 13 Plan were made, the Bankruptcy Court issued an order granting Plaintiff a discharge, including the unsecured portion of the Green Tree claim owed to the Defendant ("Discharge Order"). The Discharge Order discharged Plaintiff from any liability for the unpaid portion of the debt created by the Account. Included with the Discharge Order was an explanation of the general injunction prohibiting any attempt to collect discharged debts, warning all creditors, in conspicuous language, that "**Creditors cannot collect discharged debts**" and that "Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees."

22. On April 8, 2020, the Bankruptcy Noticing Center mailed a copy of the Discharge Order to Green Tree and Ditech by first class mail. This mailing, which was not returned, constituted notice to Defendant of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay of 11 U.S.C. § 362 with the discharge injunction imposed by 11 U.S.C. § 524(a).

23. A true and correct redacted copy of the Discharge Order is attached hereto as Exhibit "C."

**B.     After the Discharge of the Debt in Plaintiff's Bankruptcy Case, Defendant Attempted to Collect the Discharged Debt from Plaintiff Personally and Made Harassing and Offensive Contacts with Her.**

24.     Following the April 6, 2020 entry of the Discharge Order in Plaintiff's Bankruptcy Case, Defendant engaged in prohibited debt collection activity against Plaintiff on the Account by sending Plaintiff correspondences and notices on the Account and a default letter threatening to foreclose on the Collateral.

25.     On or about April 24, 2020, Defendant sent Plaintiff a regular Mortgage Statement, together with a detachable payment coupon and return envelope, representing that the sum of $20,208.53 was then due and payable by 05/05/2020, even though the Account had been paid through Plaintiff's Chapter 13 Plan and the unsecured portion discharged.  The statement warns Plaintiff: "Important Notice: NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." The statement further warns Plaintiff: "As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations."

26.     A true and correct redacted copy of the April 24, 2020 Mortgage Statement is attached hereto as Exhibit "D."

27.     On or about May 26, 2020, Plaintiff called Defendant and talked to a representative named Shelby and advised them the Account had been paid though her Chapter 13 Plan and the remaining unsecured portion discharged.

28.     On or about May 27, 2020, Defendant sent Plaintiff a regular Mortgage Statement, together with a detachable payment coupon and return envelope, representing that the sum of $854.57, including a regular monthly payment of $500.30 and total fees and charges of $791, was then due and payable by 06/05/2020, even though the Account had been paid through Plaintiff's

Chapter 13 Plan and the unsecured portion discharged. The statement warns Plaintiff: "Important Notice: NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." The statement goes on and warns Plaintiff: "As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations."

29. A true and correct redacted copy of the May 27, 2020 Mortgage Statement is attached hereto as Exhibit "E."

30. On or about June 22, 2020, Defendant sent Plaintiff a regular Mortgage Statement, together with a detachable payment coupon and return envelope, representing that the sum of $1,791.60, including a regular monthly payment of $500.30, was then due and payable by 07/05/2020, even though the Account had been paid through Plaintiff's Chapter 13 Plan and the unsecured portion discharged. The statement warns Plaintiff: "Important Notice: NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." The statement further warns Plaintiff: "As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations."

31. A true and correct redacted copy of the June 22, 2020 Mortgage Statement is attached hereto as Exhibit "F."

32. On or about July 22, 2020, Defendant sent Plaintiff a letter regarding hazard insurance on the property, stating: "Because hazard insurance is required on your property, we plan to buy insurance for your property." The letter warns Plaintiff that the insurance they buy "[m]ay be significantly more expensive than the insurance you can buy for yourself." The letter

further warns that "Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose."

33. A true and correct redacted copy of the July 22, 2020 letter Defendant sent Plaintiff is attached hereto as Exhibit "G."

34. On or about August 4, 2020, Defendant sent Plaintiff a loss mitigation packet, stating Defendant "is committed to offering assistance and exploring options that may assist our borrowers who filed for bankruptcy with a temporary or long-term solution." The letter then instructs Plaintiff to complete lengthy forms for these options, seeking Plaintiff's personal and financial information, and instructed Plaintiff to "Act now and call us…" because "[t]he sooner you respond, the quicker we can determine whether you qualify." Defendant sent this letter to Plaintiff even though the Account had been paid through Plaintiff's Chapter 13 Plan and the unsecured portion discharged.

35. A true and correct redacted copy of the August 4, 2020 loss mitigation packet Defendant sent Plaintiff is attached hereto as Exhibit "H."

36. On or about August 21, 2020, Defendant sent Plaintiff a "second and final notice" letter regarding hazard insurance on the property, stating: "Because hazard insurance is required on your property, we plan to buy insurance for your property." The letter warns Plaintiff that the insurance they buy "[w]ill cost an estimated $277.68 annually, which may be significantly more expensive than the insurance you can buy for yourself." The letter further warns that "Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose."

37. A true and correct redacted copy of the August 21, 2020 letter Defendant sent Plaintiff is attached hereto as Exhibit "I."

38. On or about September 8, 2020, Defendant sent Plaintiff a letter regarding hazard insurance on the property, stating: "it has become necessary to place lender-placed insurance coverage on your property," and encloses a "Lender-Placed Insurance Evidence of Hazard Insurance." The letter informs Plaintiff that the "premium will be charged to your escrow account," and that "[y]our monthly payments will be adjusted to cover this cost."

39. A true and correct redacted copy of the September 2, 2020 letter Defendant sent Plaintiff is attached hereto as Exhibit "J."

40. On or about October 26, 2020, Defendant sent Plaintiff an "Annual Escrow Account Disclosure Statement - Account History," together with a detachable payment coupon and return envelope, representing that a "Full Shortage Amount" of $161.98 was due and owing. The statement advised Plaintiff that "Your escrow shortage has been spread over 12 months, resulting in an additional increase in your monthly payment in the amount of $13.50."

41. A true and correct redacted copy of the October 26, 2020 statement Defendant sent Plaintiff is attached hereto as Exhibit "K."

42. On or about November 5, 2020, Defendant, representing that it had acquired the servicing rights to the Account, sent Plaintiff a "NOTICE OF DEFAULT AND INTENT TO ACCELERATE" demanding payment of $1,841.60 within 45 days or "Shellpoint will accelerate the maturing date of the Loan and declare all outstanding amounts under the Loan immediately due and payable," and threatens that upon acceleration, "Shellpoint will refer the property that is collateral for the Loan for foreclosure…" The notice goes on to advise Plaintiff to call Defendant "as interest, payments, credits, fees and or other permissible charges can continue to cause your account balance to vary from day to day." On the reverse side the letter states " NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose."

43. A true and correct redacted copy of the November 5, 2020 notice is attached hereto as Exhibit "L."

### C. Post-Discharge, Defendant Made Material Misrepresentations to Plaintiff and TransUnion to Deceive and Coerce Her into Making Payments on the Account.

44. After the debt on the Account was discharged and the discharge injunction was in effect, the Account should have been reported to any credit reporting agency ("CRA") as closed, a zero-balance, and discharged in bankruptcy. Defendant, however, failed to do this, and instead reported false and negative information about the status of the Account to the CRAs to be reported on Plaintiff's credit reports in order to coerce payment from her.

45. To illustrate, on November 20, 2020, Defendant made material, false and defamatory representations to TransUnion to be reported on Plaintiff's credit report, that the status of the Account was "Account 120 days past due date," that the terms were "$500 per month, paid monthly for 252 months," that the Account had a Balance due as of 11/2020 of $20,278, but concealed the fact that the debt had been discharged in Plaintiff's bankruptcy.

46. A true and correct redacted copy of relevant portions of Plaintiff's 1/11/2021 TransUnion credit report are attached hereto as Exhibit "M."

### V. GROUNDS FOR RELIEF - COUNT I

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

47. Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs above as if fully rewritten here.

48. Defendant has violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

    a)    Tex. Fin. Code § 392.301(a)(8) prohibits Defendant from taking an action prohibited by law. Inasmuch as: 1) the bankruptcy discharge injunction prohibits anyone from attempting to collect debts discharged in bankruptcy *in personam*; and 2) the common law protects Plaintiff's privacy rights; Defendant's actions against Plaintiff violated the TDCA;

    b)    Tex. Fin. Code § 392.303(2) prohibits Defendant from collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer. Inasmuch as Defendant was attempting to charge interest, late fees on the Property post-discharge, it violated this section of the TDCA;

    c)    Tex. Fin. Code § 392.304(a)(8) prohibits misrepresenting the character, extent, or amount of Plaintiff's debt. Defendant misrepresented to Plaintiff and TransUnion credit bureau that the Account, which had been discharged, was past due and owing in the correspondences Defendant sent to Plaintiff post-discharge and in its reporting to TransUnion; these were misrepresentations of the character, extent or amount of the subject debt, in violation of the TDCA;

    d)    Tex. Fin. Code § 392.304(a)(12) prohibits representing that a consumer debt will definitely be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a written contract or statute does not authorize the additional fees or charges. Since 11 U.S.C. § 524 prohibits Defendant from attempting to collect on the discharged debt on the Account, as Plaintiff was no longer personally liable for it upon discharge, for the same reasons stated in the preceding paragraph (b), above, Defendant violated this section of the TDCA; and

    e)    Tex. Fin. Code § 392.304(a)(19) prohibits Defendant's use of false representations or deceptive means to collect a debt, for the reasons stated in the preceding paragraphs (a, c and d); Defendant intentionally tried to coerce or deceive Plaintiff into paying the debt, while Defendant knew the Account was discharged in Plaintiff's bankruptcy, rendering the debt legally uncollectible from Plaintiff *in personam.*

49.     Under Tex. Fin. Code Ann. § 392.403, Defendant's actions make it liable to Plaintiff for actual damages, statutory damages, costs, and reasonable attorney's fees. Also, Plaintiff's injuries resulted from Defendant's malice, actual fraud, and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

50.     Because of Defendant's conduct, Plaintiff was forced to hire counsel to pursue this action, and Plaintiff's recoverable damages include her reasonable attorney's fees incurred in prosecuting this claim.

## VI. GROUNDS FOR RELIEF - COUNT II

### INVASION OF PRIVACY

51. Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs above, as if rewritten here in their entirety.

52. At all pertinent times, Plaintiff had a reasonable and lawful expectation not to be contacted and harassed by Defendant after the bankruptcy and post-discharge, when Plaintiff had paid the Account as part of her Chapter 13 Plan with any unpaid portion being discharged. Thus, Defendant's sending of the post-discharge default letter to Plaintiff with threats to foreclose on the Collateral if additional payments were not made and its false and malicious reporting to TransUnion which was disseminated to Plaintiff's creditors and potential creditors, was an invasion of Plaintiff's privacy rights. These wrongful acts of Defendant caused injury to Plaintiff.

53. Defendant's wrongful acts were invasions of Plaintiff's privacy rights and caused injury to Plaintiff, which resulted in extreme emotional anguish, loss of time and inconvenience. Plaintiff's injuries resulted from Defendant's malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VII. GROUNDS FOR RELIEF – COUNT III

### DEFAMATION

54. The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

55. Defendant provided statements of fact, post-discharge, of the subject debt in Plaintiff's Bankruptcy Case for the Account regarding Plaintiff, her payment history, and the status of the Account to be published through TransUnion. Accordingly, Defendant may be held liable for TransUnion's republication of the false and defamatory statements because Defendant's

actions created a reasonable risk that the defamatory matter would be communication to other parties by TransUnion.

56. The published statements referred to Plaintiff and were false.

57. The published statements were defamatory, as the false statements constituted an invasion of the Plaintiff's interests in her reputation and good name.

58. The publication of such false statements of fact about Plaintiff, her payment history, and the status of the Plaintiff's Account was done with actual malice and/or willful intent to injure the Plaintiff.

59. Actual malice is defined as publishing a statement with knowledge of or reckless disregard for its falsity.

60. Defendant acted with actual malice and/or willful intent to injure the Plaintiff because it willfully provided for publication of false information regarding Plaintiff's payment history, and the status of the Account with knowledge of the falsity of such information, having been informed of the truth by Plaintiff.

61. Defendant's publication of the false information regarding Plaintiff, her payment history, and the status of the discharged Account was also done with reckless disregard for the truth.

62. Defendant's malice may be inferred from the fact that Defendant continually published false and misleading information regarding Plaintiff, her payment history, and the status of the Account post-discharge to TransUnion despite having actual knowledge of the bankruptcy and the discharge of the unsecured portion of the Account, Defendant having participated in the Chapter 13 process and being the recipient of payments from the Chapter 13 Trustee.

63. Defendant provided for publication of the defamatory information intentionally and with knowledge of its falsity. Additionally, each time the false statements were presented to a third party, in the form of credit inquiries, a new publication occurred.

64. Plaintiff has suffered actual damages, including suffering the humiliation of being denied credit, increased costs of credit, increased interest rates, attorney's fees and/or out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of Defendant's publication of defamatory statements.

65. Plaintiff is entitled to actual damages as a result of Defendant's publication of defamatory statements.

66. As outlined in the preceding counts and the preceding factual allegations, the Defendant has violated the Bankruptcy Code. Plaintiff seeks a declaration that Defendant's erroneous credit reporting at issue with TransUnion concerning Plaintiff's Bankruptcy Cause and the resulting discharge of the debt on the Account as to Plaintiff's liability for the Account, violates the Bankruptcy Code, the Confirmation Order, and the discharge injunction.

67. Plaintiff is entitled to attorneys' fees and costs pursuant to the Federal Declaratory Judgment Act.

## VIII.  GROUNDS FOR RELIEF- COUNT IV

### VIOLATION OF THE DISCHARGE INJUNCTION

68. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above, as if set forth herein in their entirety.

69. At all material times, Defendant had actual knowledge of Plaintiff's Bankruptcy Case, the completion of her Chapter 13 Plan, and of the discharge of the unsecured portion of the debt on the Account.

70. Defendant attempted to collect from Plaintiff personally on the discharged debt or to get Plaintiff to take some action to benefit the Defendant, as evidenced by the sending of the post-discharge correspondence when the debt had already been paid or discharged.

71. Defendant's actions were willful acts in furtherance of its efforts to collect the discharged debt from Plaintiff, in violation of the discharge injunction imposed by 11 U.S.C. § 524(a). Further, Defendant's acts were harassing and attempts to coerce and deceive Plaintiff to pay the discharged debt. Defendant's failure to comply with the aforesaid laws, despite Defendant's being on notice of Plaintiff's Bankruptcy Case and discharge and the effect of Plaintiff's discharge, illustrates Defendant's utter contempt for federal law and the discharge injunction.

72. The actions of Defendant constitute harassment and coercive and/or deceptive actions taken to collect a discharged debt from Plaintiff, in gross violation of the discharge injunction imposed by 11 U.S.C. § 524(a)(1)-(3).

73. Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in the bankruptcy filed by Plaintiff. After this prima facie showing by Plaintiff, the duty falls on Defendant to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability. Failing a showing by Defendant of its present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiff must prevail on her claims, and Defendant must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court. Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant. Any allegation of a good faith exception should not be allowed.

74. Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order issued pursuant to 11 U.S.C. § 524(a)(2) that "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived . . .".

75. There are no exceptions under 11 U.S.C. § 524, other provisions of the United States Bankruptcy Code, or other applicable law that would permit Defendant's conduct, which was in blatant disregard of the discharge injunction.

76. The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here. No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

77. Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to Defendant's violations of the orders and injunctions of the Bankruptcy Court. Any burdening of Plaintiff with an obligation to police the misconduct of Defendant would be a complete derogation of the law. It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for bearing the cost of compliance. Any attempt by Defendant to mount such a defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any such defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendant. No defense of failure to mitigate should be allowed.

78. Plaintiff has been injured and damaged by Defendant's actions, and Plaintiff is entitled to recover judgment against Defendant for actual damages and punitive damages, plus an

award of costs and reasonable attorney's fees, for Defendant's violations of 11 U.S.C. § 524 and pursuant to the Court's powers under 11 U.S.C. § 105.

### IX. VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR*

79. Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendant, the principal, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability on Defendant for all such actions under the doctrine of *respondeat superior* and/or vicarious liability.

### X. DAMAGES

80. In addition to any damages previously stated hereinabove, the conduct of Defendant has proximately caused Plaintiff past and future monetary loss; past and future mental distress, emotional anguish and a discernable injury to Plaintiff's emotional state; and other damages, evidence for all of which will be presented to the jury. Additionally, Plaintiff is retired and the demands for payment and threat to seize her mobile home that was paid off in her Chapter 13 Plan has caused enormous stress, depression, anxiety and fear of losing her home. Also, Defendant is reporting to TransUnion that she still owes $20,278 which is false and has damaged her credit score and is blocking her ability to seek a reverse mortgage to aid in her retirement. Moreover, dealing with the consequences of Defendant's actions has cost Plaintiff time and mental energy, which are precious to her.

81. At all relevant times, Defendant knew, and it continues to know, that, pursuant to a discharge order granted by a U.S. Bankruptcy Court, discharged debts are no longer legally collectible, but Defendant made a corporate decision to act knowingly, willfully, maliciously, and contrary to its knowledge of bankruptcy law, to attempt to collect on the debt it knew had been

discharged as a result of Plaintiff's Bankruptcy case. Defendant had no right to engage in any of its actions at issue.

82. Plaintiff believes that, after reasonable discovery in this case, she will be able to show that all actions taken by, or on behalf of, Defendant were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiff, with the actual knowledge that such actions were in violation of the law.

83. Plaintiff believes that, after reasonable discovery, she will be able to show that Defendant has been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendant, intentionally and knowingly, has refused to correct its policies and comply with applicable laws, of which laws it is well-aware.

84. Plaintiff believes that, after reasonable discovery, she will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its established policies and procedures, with respect to knowingly, willfully, intentionally, and maliciously attempting to collect on debts discharged in bankruptcy. Accordingly, Defendant is subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendant. Moreover, Plaintiff's injuries resulted from Defendant's malice, and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

85. Plaintiff believes that, after reasonable discovery, she will be able to show that Defendant's actions at issue were part of Defendant's illegal design, implemented in its policies and procedures, to profit by harassing unsophisticated debtors and collecting debts that had been included and discharged in the debtors' respective bankruptcy cases.

86. Due to Defendant's conduct, Plaintiff was forced to hire counsel, and her damages include reasonable attorney's fees incurred in prosecuting her claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Patricia Gail Kent prays the Court:

A. Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendant's violations of the TDCA, Plaintiff's privacy rights, for defamation, and for violations of the discharge injunction.

B. Find that appropriate circumstances exist for an award of punitive damages to Plaintiff,

C. Find that appropriate circumstances exist to render the declaratory relief sought by Plaintiff and render and make such declaration as requested;

D. Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

E. Grant such other and further relief, in law or equity, to which Plaintiff might show she is justly entitled.

Respectfully submitted,

*/s/ James J. Manchee*
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Suite 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

January 19, 2021                */s/ James J. Manchee*
Date                            James J. Manchee